Cjvrr, J.
This is a question of probat. There is a direct clashing of evidence in two of the subscribing witnesses to the will: both cannot have sworn truly. The county and circuit courts, having these witnesses before them, have given credit to the witness in favour of the will. Taking him to have spoken the truth, I think his evidence, with that of Hendrick, establishes this as a good will of lands. It was said, in the argument, that the point in this case, is decided by Burwell v. Corbin; that the distinction taken in Smith v. Jones, between a court of probat acting upon evidence, and a court of chancery, acting--on a special verdict found on an issue of devisavit vel non, would not reconcile the cases; and that we must overrule Burwell v. Corbin, if we sustained the will here. For myself, I must say, I think that case went too far. Yet there is, surely, a sound distinction between a court of probat acting upon evidence, and a court deciding the law upon the facts found by a special verdict. Upon this distinction, the court, in Smith v. Jones, meant to leave Burwell v; Corbin undisturbed: and I am not disposed, at present, to inquire, whether, on the strict and narrow ground of a special verdict, it may not stand: but, certainly, I can never consent that it shall govern a *441 court of probat, in deciding upon evidence. I am for affirm- . ing the sentence.
Cabell, J.
This is a controversy as to the probat of the will of Gwin Dudley, as a will of lands. It was established by the concurrent sentences of the county and circuit courts of Franklin; and the evidence for and against the will, having been spread upon the record, the case now comes before this court, on an appeal from the sentence of the circuit court, upon that evidence. There are four subscribing witnesses to the will. One was not examined at all. Another, Phmbe Maxey, so far from supporting the will, deposes to facts, which, if true, would invalidate it, and would shew that R. Pasley the first subscribing witness is totally unworthy of credit. This would leave but a single witness in support of the will. But it is manifest that both the courts below disbelieved Maxey, and gave full credit to Pasley. There is nothing in this record sufficient to destroy the credit of either of these witnesses, except it be the testimony of the other. The credibility of witnesses depends on a variety of circumstances, which may be seen and known by those who are present at their viva voce examination, but which cannot be transmitted through their written testimony, to an appellate court. On a mere question of credibility, therefore, when there is nothing in the record to throw light on the subject, this court will always presume, that the inferiour court, that saw and heard the witnesses examined, has decided correctly.
This will, then, depends on the sufficiency of the testimony of R. Pasley and Hendrick.
I shall first inquire as to the sufficiency of Hendrick's testimony. In the case of Smith v. Jones, judge Carr, speaking for the court, draws a distinction between a case where the court is deciding upon a special verdict, as in the' case of Burwell v. Corbin, and a case like the present, where the court has to decide, as a court of probat, on the *442 evidence given for or against a will: in the former case, we are limited to the facts as stated; we can deduce no inference from them : in the latter, we may infer every thing from the evidence, that a jury might fairly infer. I sat in Burwell v. Corbin. It is due to candor to admit, that I did not proceed on any such distinction as that taken in Smith v. Jones. My opinion would not have been different, at that time, had the case stood on a statement of the evidence, and not on a special verdict. But I have had occasion to reconsider, with great attention, the case of Burwell v. Corbin, and I have come to the conclusion, that the decision can be justified, only on the ground that it was on a special verdict; and that, even in that aspect of the case, it ought to have been sent back for a more perfect finding of the facts.
Proceeding then on the principle, that it is competent to this court, to infer from the evidence, whatever a jury might fairly infer from it, let us see what is proved by the testimony of Hendrick. I will premise, however, that the only requisites to a will of lands, are, that it shall be in writing, and signed by the testator, or by some other person in his presence and by his direction ; and, if not wholly written by the testator, that it shall be attested by two or more credible witnesses, in his presence. But the statute does not prescribe the kind or degree of proof, by which the fact of signing, whether by the testator or some person for him, shall be established. It is not necessary, that the witnesses shall see the signing. Proof of an acknowledgement of the signature by the testator, is as sufficient to prove the signature, as proof by the witnesses that they saw the act of signing. Grayson v. Atkinson, 2 Ves. sr. 454. Ellis v. Smith, 1 Ves. jr. 11. In-like manner, an acknowledgement, that a writing to which a man’s name is signed, is “his will,” is proof that he signed the will. Westbeech v. Kennedy, 1 Ves. & Beam, 362. Now, the writing in controversy, purports to be the will of Gwin Dudley, and his name is signed to it as the testator; and Hendrick deposes, that this very paper was acknowledged by Dudley, and that he subscribed *443 his name, as a witness, in his presence. It is true, he does not expressly say, that Dudley’s name was or was not signed to the will, at the time it was acknowledged. But it is not usual for men to acknowledge papers, either as deeds or wills, and to call on others to attest them, before they are signed. Such a thing may happen; and when it is proved to have happened, the acknowledgement and attestation will be disregarded. But, in the absence of all proof to the contrary, the acknowledgement and attestation give rise to an irresistible inference, that the instrument had been previously signed. A contrary course would defeat a vast number of deeds and wills; for it may often happen, and frequently does happen, that a witness, not only does not remember to have seen the signature, but he does not remember the acknowledgement or the attestation; but when he sees his name subscribed by himself, as a witness, and knows that he would not have witnessed a blank or unacknowledged paper, he feels no more doubt of the due execution of the paper, than if he distinctly recollected all the circumstances. We must take it, therefore, that this will was signed, when it was acknowledged before the witness Hendrick. That acknowledgement is proof, prima facie, that it was signed by the testator himself. But if the signature was, iu fact, by some other person, then the acknowledgement is a ratification of the signature; and from that ratification we may fairly infer, that the signature was made in his presence, and by his direction. Therefore, I am of opinion, that the testimony of Hendrick is full and ample.
As to the testimony of Pasley, he says, that he wrote the will, and signed the testator’s name, in his presence, and at his request, and that he subscribed his name as a witness in the presence of the testator. This testimony was objected to by the counsel for the appellants, because it did not state that the will, after having been written, was read to or by the testator. But I think we may fairly infer from the testimony, as it now7 stands, that the will was written according to instructions given by the testator, and that as it was writ *444 ten in his presence, he was sufficiently acquainted with its contents.
I think the sentence should be affirmed.
Brooke, J.
The case of Burwell v. Corbin (which has been much commented on, and, in my opinion, not correctly understood) was a case of an anomalous character; but the principle decided by it, was, I think, intirely correct. It was an issue of devisavit vel non out of chancery; and, by the acquiescence of the parties, if not by their express consent, the jury which tried it, was permitted to find such evidence as it gave credit to. The verdict was not found as a special verdict; if it had been, it would have been sent back, that the facts and not the evidence of facts, might be found. It,, therefore, left the inquiry as to the validity of . the will, as open as if. the case had stood on an appeal from the sentence of a court of probat. And the case was so treated here, as may be seen by a reference to the opinions of all the judges. The material inquiry in the case, was, whether the factum of signing the will, by the authority of the testator, must be proved by two witnesses under our statute ? In examining the testimony found by the jury on that point, the first question was, whether, one witness having proved the signing of the will by Corbin, at the request of the testator, his acknowledgement to a second witness, who did not see the signing, that the paper produced tvas his will, was proof by two witnesses, that it was signed by Cor-bin, by the testator’s direction, at his request and in his presence. I said, that the question, whether the factum of signing must not be proved by all the witnesses, had been much discussed by the judges in England, from the case of Lemayne v. Stanley, down to the case of Grayson v. Atkinson, and (I might have said) to the case of Westbeech v. Kennedy. In Grayson v. Atkinson, lord Hardwiclce calls the acknowledgement of the testator, that it was his signature, proof of the factum of signing by him, in some sense; and explains what he meant, by the example *445 he put of the obligor of a bond acknowledging to the witness that it was his signature. In this case, then, the acknowledgernent by the testator, that the signature was his, was deemed equivalent to proof, that the witness saw him sign the will, as seems to have been before required, and was much stronger evidence of the factum of signing the will by the testator, than the bare acknowledgement by the testator that it was his will. And in Westbeech v. Kennedy, it is very clear, that the bare acknowledgement by the testator, that the writing was his will, was not held to be equivalent to proof of the factum, of signing by the testator. There, two witnesses having proved the will according to the statute, the question turned on the evidence of the third witness, Henry Boys: his testimony may be seen by turning to the case. The testator did more than acknowledge to the witness, that it was his will: he also sealed the will in his presence; which was said by the counsel, sir S. Romilly and Mr. Parker, to be a recognition by the testator of his signature; but it was not said or pretended, that the bare acknowledgement that it was his will, or the publication of it as his will, to the witness, in the absence of the fact that he had sealed it in his presence, was a recognition of his signature. And f have seen no case, in which the bare acknowledgement of the will to a witness, in the absence of all proof that it was signed at the time by the testator, or by some one for him by his direction, was held to be a recognition of his signature, equivalent to proof of the factum of signing by him or some one for him. As to the latter, in the case of Ellis v. Smith, the acknowledgement of the signature by the testator, was held to be sufficient proof of the signing by him : but lord Hardwicke said, “ it lias been hinted, that this decision would lead the way to farther deviations from the statute, and, by consequence, would allow a testator’s declarations, that another signed for him, to be good : but authority given by a testator, is a collateral thing, and a thing that ought to be proved; consequence is not to be built on consequence he does not say *446 how proved : but can it be doubted, that he meant proved according to the statute, or by some equivalent proof, which the acknowledgement of the testator was not? This of itself would justify the decision in Burwell v. Corbin. But it is said, that, in that case, we had the testimony of Scrimger, the first witness, that Corbin had signed the will for Burwell, by his direction 8sc. and we should have taken it to have been signed, when Burwell acknowledged it to be his will, to Braddick, the second witness. In Westbeech v. Kennedy, there were two witnesses who had proved the sigture of the testator, before Henry Boys, the third witness, was called; yet the acknowledgement of the testator, that it was h;s will, would not have been held a recognition of his signature, if he had not sealed the will in his presence; an act which naturally follows, and does not precede, the act of signing, and was of itself a recognition of the signature. It must be admitted, that a paper attested before it is signed, is not a will under the statute; that the statute requires the attestation of two witnesses, after ir is a perfect will. If all the witnesses die, or are out of the jurisdiction of the court, then, of necessity, proof is admitted of their handwriting, and is all that can be required to identify the paper attested by them.' But if they are present, all must identify the paper attested by them. In such case, the statute requires, that two witnesses shall prove the factum of signing by the testator. Suppose he acknowledge the will only, before both of them, and before it is signed, as was the case in Burwell v. Corbin, as to one of the witnesses; would such an acknowledgement be a compliance with the statute ? The witnesses, in such case, by looking at their signatures, might identify the paper they attested; but they could not say, that it was a will executed by the testator by signing his name to it. This would open the door to fraud: a paper not signed by the testator, but afterwards by another, might be palmed upon a court for a will. I have seen no case, in which the acknowledgement of the testator, that the paper was his will, in the absence of all proof that it *447 was signed by him at the time the acknowledgement was made, has been held a recognition by the testator of his signature.
In Smith v. Jones, the point in Burwell v. Corbin was not involved. The ground we went on, was, that one witness having proved the signature, and it not appearing that Pendergast, the other witness, was dead or out of the power of the court, we would not, as in case of his death or being out of the jurisdiction of the court, admit proof of his handwriting ; and we reversed the judgement, and sent the cause back, that his testimony, if to be had, might be adduced. What was said by the judge who reported the opinion of the court, of the case of Burwell v. Corbin, was certainly not relied on, as making any part of the opinion of the court in the case, as it was unnecessary to the judgement pronounced.
. I shall not repeat the evidence in the case now before us. I am inclined to think that it is insufficient to establish the will, and, therefore, that the sentence ought to be reversed.
Tucker, P.
The county and circuit courts having coincided, in this case, in giving credit to the witnesses in support of the will, though contradicted by a witness against it, we are bound, by reason and authority, to follow their judgement in this regard.
Taking then for true, as I shall do, the testimony of Pasley and Hendrick, I cannot hesitate in affirming the sentence. The former explicitly states, that he wrote the will, and subscribed it as a witness, at the request and in the presence of the testator. It was objected, indeed, that it is not proved that it was dictated by, or read over to, the testator. But if, as the witness says, it was written by the request and in the presence of the testator, we might fairly presume, that the testator did dictate the will which was written. But the proof of that fact has never been deemed necessary, where the testator has duly executed the will by signing and ac *448 knowledgement. Innumerable wills, written by third persons anc* signed by testators, are attested without any evidence whatever of the circumstances under which they were drawn. The recognition of them -by execution, is sufficient. It can never be fairly presumed, that a testator performs so solemn an act, without having dictated or understood it. Where, indeed, in the case of personal property, the will is not executed, it must be shewn, that it was written as dictated by the testator, or was approved after having been read. In this case, if the execution be regular, according to the statute, we must take it, that the testator was aware of the contents of the paper, before he executed itand the rather as it bears date so many years before his death; as his fears of having pretermitted a daughter evinces a general knowledge of its contents; and as the witnesses against the will, if they are to be believed, themselves establish the fact of his having spoken of the will he had made with disapprobation, which could not well have been if he was ignorant of its contents.
The execution of the will seems to me to have been sufficient. Pasley proves the signing it by himself at the request of the testator, and attesting it in his presence. Here, then, is one complete witness to the will. Hendrick also proves, that the testator acknowledged the will in his presence, and he attested it accordingly. It is objected, that this acknowledgement is not sufficient, according to the statute, and the authority of Burwell v. Corbin. That case is not exactly in point; and though I shall certainly not disregard its authority where it is so, yet I am sustained by the case of Smith v. Jones, in saying that it affords no binding precedent in this case. The case of Burwell v. Corbin was decided on a special verdict rendered upon an issue devisavit vel non. This case is before a court of probat. In that, the court was, perhaps, tied down to the facts as found 5 in this, it discharges the functions, not only of judges, but of jurors; having the power to infer a fact from the evi *449 deuce before it. In this case, therefore, I think myself entitled to infer, that when the testator acknowledged the will produced to Hendrick, as his will, he did acknowledge thereby the signature also. For Hendrick says the paper produced at the trial was that which was acknowledged, and we must therefore presume, it was signed as we see it, in the absence of proof to the contrary. Although, therefore, I do not contest the necessity of two witnesses to the recognition of the signature, since the case of Burwell v. Corbin demands them, yet I think that recognition may fairly be inferred here.
If these views are right, then the will was duly executed in its original form, to pass real estate. What then was the effect of the alteration ?
1. What was the alteration? It was to provide, for a daughter, and upon the face of the will not a particle of real property is given to a daughter. We may, therefore, fairly infer, that no part of the will devising real estate was then inserted ; and, indeed, that no such part was' erased, though even this would not have affected the residue. The will, then, is unimpaired as a will of realty.
2. How as to the personalty? The alteration having been made, and reduced to writing, in the testator’s presence, and by his direction, I think the reasons very strong for sustaining it without Hendrick’s testimony. But it is clear, that the alteration and his attestation were made about the same time. To suppose that the alteration was first made, will account for the desire to have a new witness to the will, seven years after it was first executed. To suppose the contrary, would leave that matter very obscure. If the alteration was first made, and then the will was acknowledged before Hendrick, there can be no doubt it is good as to the personalty in toto.
I am, therefore, of opinion, that the sentence should be affirmed : to which opinion I incline more readily, as the parties may, (if they please to pursue this matter further) prosecute their objections to the will, by bill in equity, and *450 have its validity determined by an issue devisavit vel non; whereas if we, as a court of probat, decide against the will, the decision may, perhaps, be conclusive on the rights of the parties.
Sentence affirmed.